HANOVER INSURANCE COMPANY *VS.* COMMISSIONER OF
INSURANCE & another.[1]

Suffolk. November 2, 2004. - December 15, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Administrative Law*, Regulations. *Commissioner of Insurance. Insurance*, Motor vehicle insurance, Unfair act or practice. *Regulation. Statute*, Construction.

This court concluded that the commissioner of insurance (commissioner) did not abuse her discretion in dismissing a complaint brought by an automobile insurance company against another automobile insurance company alleging unfair or unreasonable or improper practices under G. L. c. 175, § 113H (statute), where the statute allowed but did not compel the commissioner to take action after finding unfair or unreasonable conduct, and where the commissioner held a proper hearing on the complaint and issued an order concluding that the issue was best decided through the rule-making process rather than by adjudication. [49-51]

CIVIL ACTION commenced in the Superior Court Department on June 14, 2002.

The case was heard by *Janet L. Sanders*, J., on motions for judgment on the pleadings.

The Supreme Judicial Court granted an application for direct appellate review.

*Owen Gallagher* for the plaintiff.

*Romeo G. Camba*, Assistant Attorney General, for Commissioner of Insurance.

*Roberta R. Fitzpatrick* (*Elizabeth B. Burnett* with her) for Arbella Mutual Insurance Company.

IRELAND, J. Hanover Insurance Company (Hanover) filed a complaint against Arbella Mutual Insurance Company (Arbella) with the Commissioner of Insurance (commissioner) alleging that Arbella had engaged in "unfair or unreasonable or improper

---

[1]Arbella Mutual Insurance Company. In its amended complaint, Hanover joined Arbella as a necessary party pursuant to G. L. c. 231A, § 8.

practices" under G. L. c. 175, § 113H. The commissioner is-
sued a decision[2] dismissing the complaint for failure to state a
claim on which relief could be granted, stating that even if
Hanover's allegations were true, they did not rise to the level of
an unfair practice under the statute or the plan and rules enacted
pursuant to the statute. A Superior Court judge affirmed the
commissioner's decision. We granted Hanover's application for
direct appellate review to determine whether the commissioner
abused her discretion in failing to take action against Arbella.
Because we conclude that the commissioner did not abuse her
discretion in dismissing the complaint, we affirm.

*Facts.* General Laws c. 175, § 113H, enabled the creation of
a regulatory scheme that provides motor vehicle insurance to
high risk individuals who would otherwise be unable to obtain
it (residual market), and that fairly apportions the resulting
losses and expenses among insurance carriers that provide such
insurance. *Hartford Acc. & Indem. Co. v. Commissioner of Ins.*,
407 Mass. 23, 24 (1990). Pursuant to the statute, a plan was
designed to carry out the statute's objectives which, in turn, cre-
ated the Commonwealth Automobile Reinsurers (CAR). CAR's
governing committee (under the commissioner's supervision)
adopted rules of operation to carry out the purpose of the statute.
CAR is responsible for administering the plan and the rules. All
motor vehicle insurance carriers are required to participate in
the plan as members of CAR.

The statute provides that any participating insurance carrier
has the right to complain about any other insurer, agent or
broker and, if aggrieved, may "bring a complaint to the com-
missioner alleging unfair or unreasonable or improper
practices." G. L. c. 175, § 113H (E), ninth par. In response to
such a complaint, the commissioner "shall cause a proper hear-
ing to be held . . . and shall issue such orders as [s]he then
deems appropriate." *Id.*

If the commissioner finds, "after due hearing and investiga-
tion, that any activities or practices of any insurer, agent or
broker, in connection with the submission or operation of such

---

[2]The decision was issued by two presiding hearing officers and affirmed
and adopted by the commissioner. For simplicity, we refer to the decision as
having been issued by the commissioner.

plan is unfair or unreasonable or inconsistent with the provisions of this section, [s]he may issue a written order specifying in what respects such activity or practice is unfair or unreasonable or inconsistent with the provisions of this section, and requiring the discontinuance of such activity or practice." G. L. c. 175, § 113H (E), tenth par.[3]

Under the rules, insurance agents or brokers were named "exclusive representative producers" (ERP) whereby they contracted with insurance companies to handle their business. Hanover's complaint charged that Arbella secretly paid Hanover's ERP to buy large books of residual market (high risk) business from Arbella's ERP thus reducing Arbella's share of such high risk business and increasing Hanover's share. Hanover claimed losses of between $2.5 and $3.5 million.

After holding a preliminary hearing and reviewing the memoranda filed by Hanover and Arbella, the commissioner decided that, even if the facts Hanover alleged were determined to be true, they did not rise to the level of an unfair or improper practice under G. L. c. 175, § 113H, because Arbella's alleged conduct did not violate any CAR rule then in existence. Moreover, the commissioner concluded that, because any changes in CAR's practices would affect the entire automobile insurance industry, such issues should be brought to CAR's attention first, rather than to the commissioner. Therefore, the commissioner concluded that Hanover's complaint failed to state a claim on which relief could be granted and dismissed Hanover's complaint in its entirety.[4]

*Discussion.* In her decision, the commissioner stated that she lacked jurisdiction over the complaint that Hanover brought because Arbella's behavior was not explicitly addressed in either the plan or the rules or the statute. However, at oral argument and in a postargument letter, the commissioner conceded that this was error and that the commissioner did have jurisdiction. We agree. Accordingly, the only issue to be addressed is whether

---

[3]Any decision of the commissioner "shall be subject to review by appeal to the superior court." G. L. c. 175, § 113H (E), eleventh par.

[4]The commissioner noted that, regardless of her decision, Hanover was free to seek recourse against Arbella by other avenues such as a law suit under common-law theories or statutes.

the commissioner abused her discretion in declining to take action against Arbella.

We give great deference to decisions of administrative agencies.[5] *Cobble* v. *Commissioner of the Dep't of Social Servs.*, 430 Mass. 385, 390 (1999). We may not replace the commissioner's choice between two conflicting views even though we might justifiably have made a different choice had the matter been before us in the first instance. *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Comm'n*, 377 Mass. 897, 903 (1979), and cases cited.

Contrary to Hanover's argument, G. L. c. 175, § 113H, did not require or compel the commissioner to adjudicate the issue to resolve it because the statute does not require that the commissioner investigate complaints or issue any particular orders. Rather, it simply states that she shall "cause a proper hearing" to be held and "shall issue such orders" as she "deems appropriate." G. L. c. 175, § 113H (E), ninth par. It further provides that, if she finds the conduct to be unfair or unreasonable, she "*may* issue a written order" and require the discontinuance of such conduct (emphasis added). G. L. c. 175, § 113H (E), tenth par. The terms "appropriate" and "may" connote the discretion with which the commissioner may choose to respond to an insurer's complaint. Under the statute, the commissioner is authorized to issue orders upon a meritorious complaint, but she is not compelled to do so.

In this case, the commissioner declined to exercise her adjudicatory powers in a matter that she felt was more appropriately addressed first by CAR, a forum that would permit a thorough exploration of the policy and implementation issues associated therewith. That decision was well within her discretion. See *Hastings* v. *Commissioner of Correction*, 424 Mass. 46, 49 (1997). We conclude that the commissioner held a proper hearing on the complaint and dismissed the complaint by an order

[5]We disagree with Hanover's contention, which it admits is without legal foundation, that the legal standard applicable to the dismissal of an administrative complaint for failure to state a claim should be the same as that applicable to a court complaint. Rather, we conclude that the standard of review in G. L. c. 30A should apply.

that she deemed appropriate.[6] Because the statute allows, but does not compel, the commissioner to take action when she finds unfair or unreasonable conduct, clearly it cannot be an abuse of discretion not to issue an order or require discontinuance of the conduct.[7]

Following her decision, the commissioner approved a new CAR rule to address the type of conduct alleged in Hanover's complaint.[8] The commissioner promulgated the new rule in July, 2002, as an emergency rule to take effect immediately. There is no dispute that the rule prohibits the type of conduct alleged here, however, it had prospective application only. The promulgation of a rule prohibiting the very conduct alleged to have occurred here does not compel the conclusion that the commissioner did not act within her discretion in her treatment of the issue.

*Conclusion.* For the reasons stated above, we conclude that the commissioner did not abuse her discretion in dismissing the complaint and finding that the issue was best decided by the rule-making process rather than by adjudication.

*Judgment affirmed.*

---

[6]We need not discuss Hanover's argument that an evidentiary hearing was required because in her order, the commissioner concluded that even if the facts Hanover alleged were true, they did not rise to the level of unfair or improper practices under the statute or CAR rules and the subject should be addressed by CAR rather than in an adjudicatory order. We conclude, therefore, where the alleged facts were accepted as true, an evidentiary hearing was unnecessary.

[7]Hanover's reliance on art. X of the CAR Plan of Operation is misplaced as that also provides that the commissioner "*may* issue appropriate orders" that will remedy damage caused by unfair, unreasonable, or improper practice.

[8]The rule provides, in relevant part:

> "No Servicing Carrier shall offer any inducement, monetary or otherwise, to the ERP of another Servicing Carrier to incent that ERP to accept business from, or to purchase, that Servicing Carrier's ERP or part of that ERP's book of business. . . ."